Patricia Ward FRANKLIN,
Plaintiff–Appellee,

v.

John David FRANKLIN,
Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 4, 1987.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 29, 1988.

John W. Murrey, III, Witt, Gaither & Whitaker, Chattanooga, for plaintiff-appellee.

William H. Horton, Gearhiser, Peters & Horton, Chattanooga, Harvey Cameron, Cameron & Leiderman, Jasper, for defendant-appellant.

## OPINION

LEWIS, Judge.

This is an appeal by defendant, John David Franklin, from the trial court's award of an absolute divorce to plaintiff, Patricia Ward Franklin, the amount and duration of alimony *in futuro* awarded, and the award of attorney's fees.

Plaintiff filed her complaint in which she sought, *inter alia,* a divorce from bed and board. Defendant answered, denying all material allegations of the complaint, and filed a counter-claim in which he sought, *inter alia,* an absolute divorce.

Following an evidentiary hearing the trial court found that "reconciliation is not possible and therefore, the plaintiff is awarded an absolute divorce from the bonds of matrimony pursuant to T.C.A. § 36–4–102(a)(1) rather than a divorce from bed and board."

The trial court first approved a partial settlement agreement entered into between the parties prior to trial, after finding that it made "adequate and sufficient provisions for custody and maintenance of the parties' minor children and for the equitable settlement of property rights between the parties."

The trial court then awarded periodic alimony to plaintiff of $15,000 per year and ten (10%) percent of any bonus received by the defendant, both for eleven years. He also awarded plaintiff additional alimony of $5,000 for the partial payment of attorney's fees incurred by her in this suit.

■ Defendant's first issue is: "The Court erred in awarding the divorce to Mrs. Franklin."

He argues not only that the evidence preponderates against the trial court's awarding a divorce to plaintiff but that the evidence preponderates in favor of the trial court's awarding the divorce to him.

Our review of the record fails to disclose any evidence on which the defendant would be entitled to a divorce from plaintiff. To the contrary, there is ample evidence in the record to support the trial court's award of a divorce to plaintiff.

In 1986, without any prior warning, defendant came to plaintiff and told her he wanted a divorce. Defendant told plaintiff that he loved another woman and had never loved plaintiff. He removed his wedding band, moved out of the parties' bedroom, and ceased having relations with plaintiff. Defendant verbally abused plaintiff and told her he would find his love elsewhere.

When he was unable to persuade plaintiff to obtain a divorce, he employed an attorney. He had this attorney draw a settlement agreement which defendant proposed that he and plaintiff should enter into. He then moved from the parties' home into an apartment. He threatened to quit his employment and squander all of the parties' assets and stated to plaintiff that he would no longer provide her with support. He admitted at trial to a frequent association with a woman he claimed he loved.

We find no merit to defendant's first issue.

■ By his second issue, defendant says the "trial court erred in its award of periodic alimony."

The trial court awarded plaintiff $15,000 per year for eleven years and ten (10%) percent of any bonus received by defendant from his employment for a like period.

Tennessee Code Ann. § 36–5–101 provides in pertinent part as follows:

(a)(1) Whether the marriage is dissolved absolutely, or a perpetual or temporary separation is decreed, the court may make an order and decree for the suitable support and maintenance of either spouse by the other spouse, or out of his or her property, ... according to the nature of the case and the circumstances of the parties, the order or decree to remain in the court's control; and, on application of either party, the court may decree an increase or decrease of such allowance only upon a showing of a substantial and material change of circumstances.

. . . .

(d) It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient....

Tennessee Code Ann. § 36–5–101(d) provides that the court in setting alimony "shall consider all relevant factors," including the many factors set forth in § 36–5–101(d).

We first consider the "relative earning capacity" of the parties. The record shows that plaintiff is presently working only part-time but that she is a pharmacist and has an earning capacity of between $22,000 and $32,000 per year. The defendant is a plastic surgeon, employed by a plastic surgery group in Chattanooga, Tennessee. In 1986, his salary was $112,000 plus a bonus of $70,000. He received an additional $8,000 to $10,000 from a rehabilitative center that is operated as a part of his medical practice. He received an auto allowance of $4,200 and contributions to his pension plan in excess of $20,000. He also received a $7,000 annual allowance for travel to medical meetings and conventions.

Discounting the auto allowance, contributions to his pension plan, and travel allowance, defendant still had an income in excess of $190,000 for 1986.

The record does not show the earning capacity of the defendant but, based upon his 1986 income, plaintiff has an earning capacity of less than seventeen (17%) percent of defendant's.

The parties' relative education is also a factor to be considered. Defendant had completed his basic medical studies and plaintiff had completed pharmacy school when they married in 1966.

Defendant, upon completion of medical school, pursued a general surgery residency for approximately two years. He then served for two years in the Air Force. After completion of his tour of duty in the Air Force, he completed his general surgery residency. Upon completion of the general surgery residency, he pursued and completed a plastic surgery residency. In 1978, accompanied by his family, he went to Australia for a year's training in microsurgery. The defendant has completed at least nine years of graduate studies in addition to his basic medical education.

The plaintiff pursued no graduate studies. The parties were married for twenty years and, from the date of her graduation until 1978, plaintiff worked as a pharmacist.

So far as the record shows the parties had no separate property and entered into a settlement agreement which divided the marital property on an approximately equal basis.

Included in the property received by plaintiff was certain home furnishings, silver, china, furs, jewelry, her IRA account, a $62,500 interest in defendant's pension plan, and a 1983 Toyota automobile. The proceeds of the IRA and pension plan cannot be withdrawn until plaintiff, who is forty-two years of age, is fifty-four years of age.

The parties' home is to be sold and each will receive one-half of the net proceeds, projected to be approximately $85,000 each.

The parties enjoyed a rather lavish standard of living. They lived in a home valued at $450,000 to $500,000 with a swimming pool. They had sports cars and a Mercedes Benz automobile. They had a maid and a yardman. In addition, they owned a vacation condominium at Gulf Shores, Alabama.

In *Walker v. Walker*, 656 S.W.2d 11, 15 (Tenn.App.1983), this Court stated:

We must bear in mind that this wife—apparently at husband's insistence—has devoted her married life to the maintenance of the home and the furtherance of the husband's career and that she was brought to her pre-divorce lifestyle more for the benefit of husband than for herself. Without fault on her part, this has suddenly changed and she finds a totally different lifestyle in the offing. While nothing will take the place of the marital home as it existed prior to the difficulties that arose, she should not be left in a worse financial situation than she was before the marriage was brought to an end. *See Williams v. Williams*, 146 Tenn. 38, 236 S.W. 938 (1921).

The plaintiff has made both substantial tangible and intangible contributions to the marriage. During the first several years of the parties' marriage, she worked outside the home and the record shows that for many years while defendant was pursuing post-graduate studies plaintiff worked as a pharmacist. Her income during many of these years was substantially more than defendant's and, for other years, was at least equal.

Plaintiff assisted defendant in promoting his career. While he served on the staff at Vanderbilt University Hospital as a plastic surgeon and Associate Professor of Plastic Surgery, she helped him with "his writing and his publications." Defendant published some thirty papers during this time.

By her contributions to the marriage, plaintiff has both directly and indirectly contributed to the defendant's ability to have an earning capacity of at least eighty (80%) percent more than her's.

Another factor to be considered is the relative fault of the parties. This we have discussed in detail under the first issue.

Taking all of the relevant factors into consideration, the trial court set a proper amount of periodic alimony. However, the trial court abused its discretion in awarding a percentage of defendant's bonus. As the record shows, the amount of the bonus is uncertain and can vary from year to year.

An award of periodic alimony should be fixed in "some definite amount or amounts to be paid in monthly, semi-monthly, or weekly installments, or otherwise...." Tenn.Code Ann. § 36–5–101(a)(2). "The percentage award has some problems, especially if the obligor's income rises substantially, as it may result in a higher standard of living than during the marriage." Garrett, *Tennessee Divorce, Alimony and Child Custody* § 13–5 (2d ed. 1984). *See also Parker v. Parker*, 497 S.W.2d 572 (Tenn.1973).

We therefore modify the award of periodic alimony by vacating the percentage award and increasing the specific award from $15,000 to $21,000 per year payable in equal monthly installments.

■ While in most cases only temporary support and maintenance should be awarded to an economically disadvantaged spouse until such time as they can be rehabilitated, "[w]here there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors," then the court may grant an order for "support and maintenance on a long-term basis." T.C.A. § 36–5–101(d).

The plaintiff here is at great "economic disadvantage" relative to defendant and rehabilitation is not feasible in "consideration of all relevant factors." The trial court correctly awarded periodic alimony "on a long-term basis."

We would point out that alimony *in futuro* is not set in concrete. No matter how large or how small the award, no matter how long or short the duration, the award remains in the bosom of the court and may be changed either as to amount or duration

by the court "upon a showing of a substantial and material change of circumstances." Tenn.Code Ann. § 36–5–101(a).

 The defendant's last issue is: "The trial court erred in awarding attorney's fees."

The plaintiff was awarded the sum of $5,000 which was a portion of the attorney's fees incurred by her in this case.

Ordinarily, if the wife is financially able to procure counsel, there is no occasion for fixing the amount of her counsel's fee which should be a matter of contract between attorney and client.

If the wife is financially unable to procure counsel, then it is in order for the Court to require the husband to pay such fees pendente lite as are necessary to secure the services of counsel for her.

If, in the final decree, the wife is awarded alimony in solido adequate for her needs and attorneys fees, there is again no occasion for the Court to fix a fee, which should be set by agreement of counsel and client. This principle does not, of course, deprive the Trial Judge of the discretion to fix attorneys fees in proper cases.

Where, however, the final decree does not provide funds out of which counsel may reasonably be paid, it is in order for the Court to award to the wife as additional alimony such amount as will reasonably enable her to pay reasonable compensation to her counsel.

*Ligon v. Ligon,* 556 S.W.2d 763, 768 (Tenn. App.1977).

There is no contention that the fee awarded is unreasonable, only that plaintiff is financially able to provide counsel and that the trial court therefore erred in ordering the defendant to pay a portion of her counsel fees.

The plaintiff received cash of approximately $40,000 as a result of the "partial settlement agreement." She is to receive one-half of the net proceeds from the sale of the parties' home which would net her an estimated $85,000. She has been awarded alimony *in futuro* of $21,000 and has an earning capacity of from $22,000 to $32,000 per year.

We are of the opinion that under all of the circumstances the plaintiff has adequate sums for her needs and payment of her attorney's fees. There was no occasion for the court to fix a fee.

This issue is sustained.

The judgment of the trial court is reversed as to the award of attorney's fees. The award of periodic alimony is affirmed as modified by this Court and, upon remand, the trial court shall enter a judgment awarding the plaintiff periodic alimony in the amount of $21,000 per year payable monthly for the term of eleven years. Costs are taxed to the defendant and the cause is remanded to the trial court for the collection of costs, the entry of a judgment in accordance with this opinion, and further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.