IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs February 2, 2017

## TERRY JOE McBROOM v. KELLY LORETTA FOLKERTS McBROOM

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-700      Jim Kyle, Chancellor**

_____

### No. W2016-01276-COA-R3-CV

_____

In this divorce case, Terry Joe McBroom appeals the trial court's award of alimony in futuro to Kelly Loretta Folkerts McBroom in the amount of $980 per month for three years or until Husband began drawing his retirement pension. The trial court ordered that once Husband began drawing his pension, which the parties agree will happen no later than April of 2019, the amount of spousal support will be reduced to $720. The court further ruled that Husband's support obligation would cease when Wife began drawing Social Security benefits. Finding no abuse of discretion, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Jeffrey Jones, Bartlett, Tennessee, for the appellant, Terry Joe McBroom.

William A. Cohn, Cordova, Tennessee, for the appellee, Kelly Loretta Folkerts McBroom.

### OPINION

- 1 -

# I.

The parties were married on April 17, 1999. It was the second marriage for each. They had grown children from their prior marriage. No children were born to their union. Husband filed for divorce on May 26, 2015.

The trial took place on May 3, 2016. The witnesses were the parties and Wife's son. Husband was 55 years old at the time of trial. He had worked for the City of Memphis for 32 years as a heavy equipment operator. Husband was not in good health, having previously suffered from leukemia and a heart attack, among other health issues. He elected to retire no later than April of 2019. The parties agreed that this retirement decision was irrevocable. He earned $56,892 in 2015, and he projected that he would earn $58,804 in 2016.

Wife was 53 when this case was heard. She worked for most of this seventeen-year marriage, but had been unemployed since April of 2012. In the mid-2000s, she had an accident and broke her leg in five places. As a consequence of her injuries in the accident, Wife developed an addiction to pain medication. Later, in September of 2013, she was in a car accident and suffered another serious leg injury. She testified that the prescription medications were insufficient to control her pain. In early 2015, she began using heroin. At trial, Wife stated that she had gone to inpatient drug treatment. She was attending AA meetings and trying to stay clean and sober. She testified that she earned a small income cleaning a couple of houses. Wife's statement of income and expenses filed shortly before trial showed an income of $185 per month and expenses of $1,972, a monthly deficit of $1,787. She testified that she had applied for Social Security disability benefits and had been denied, but also indicated that a decision about her eligibility for such payments was still pending at time of trial.

At the conclusion of the trial, the court orally stated its decision, dividing the marital estate and awarding Wife alimony in futuro. Husband has not appealed the trial court's division of the marital estate. Regarding the alimony award, the trial court initially stated it would order Husband to pay 20 percent of his gross monthly income, explaining as follows:

> [S]tarting in January of '17, the husband is to pay 20 percent of his gross payment, the gross salary. It's forty-nine hundred now. I'm not going to put a number on it. I'm just going to say he needs to pay 20 percent to his wife until she – that's either of his gross payment and, if he retires, for instance, and that goes down, then the payment goes down.

- 2 -

*     *     *

> In April '19, that amount is going to go down because she's going to get 20 percent of his monthly pension check until she is eligible for Social Security, either Social Security benefits based on age or Social Security benefits based upon health conditions. In other words, if she gets a disability payment – let's say for some reason she gets her disability approved next month, this gentleman doesn't pay anymore. I mean that's just the way that works. She ages in at sixty-two and gets Social Security benefits, he doesn't pay anymore. It's over at that time. It's either 20 percent of his paycheck, gross paycheck, or 20 percent of his pension amount.

Husband's counsel objected, stating, "I think there's a line of cases that you can't set support by percentage." The trial court responded, "If you feel that I need a motion to reconsider, then you'll show me the case law on that." After Husband's counsel did exactly that, the trial court agreed with his argument that a support award based on a percentage of the obligor's income was inappropriate. The court then modified its ruling.

On May 27, 2016, the trial court entered its final judgment, which provides in pertinent part as follows:

> The Wife has no pension, retirement, or 401(k) benefits. During twelve (12) years of the marriage, the Wife worked for a company called MedAssist. The Wife was discharged from this job in April 2012 and has since remained voluntarily unemployed. While unemployed, the Wife testified that she has earned a minimum income by cleaning homes. Based on her employment history, the Wife, unlike the Husband, will be eligible to receive Social Security benefits when she attains the age of sixty-two (62).[1] The proof at trial was that up until the last three years of the marriage, while the Wife may have been incapacitated, the Wife was functioning and received a pay check every two weeks, thus contributing to the marital estate. For this reason, the Court finds that pursuant to T.C.A. § 36-4-121(b)(1)(D) the Wife significantly contributed to the household during the marriage.

---

[1] At trial, Husband testified that "because the union that I'm in we don't pay into Social Security. We only have pension."

The Court further finds that the Wife, currently generating very little income, if any, is significantly economically disadvantaged compared to the Husband. . . . [T]he Court finds that the alimony award discussed below is reasonable based upon the Husband's ability to pay.

\*       \*       \*

The Husband shall pay alimony in futuro to the Wife in the amount of $980.00 for the next three (3) years, or until the Husband begins drawing his pension. Once Husband begins drawing his pension, Husband shall pay alimony to the Wife in the amount of $720.00. Alimony payments to the Wife will terminate upon Wife receiving her Social Security benefits, regardless of whether such benefits are based on age or upon health conditions.

(Footnote added.) Husband timely filed a notice of appeal.

## II.

The issue raised by Husband is whether the trial court erred in its award of spousal support to Wife.

## III.

Our standard of review of the trial court's spousal support decision is as stated by the Supreme Court:

For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also*

> ***Burlew***, 40 S.W.3d at 470; ***Robertson v. Robertson***, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." ***Kinard***, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." ***Broadbent v. Broadbent***, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. ***Robertson***, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. ***Wright***, 337 S.W.3d at 176; ***Henderson***, 318 S.W.3d at 335.

***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

## IV.

In support of his assertion that the trial court erred in awarding Wife alimony in futuro, Husband argues in his brief that "(a) the trial court calculated the alimony in futuro by use of a percentage of income formula, which is contrary to Tennessee case law; (b) the trial court ordered a future automatic modification of the alimony in futuro

award, which is not favored by Tennessee case law; and (c) the trial court failed to make an adequate finding of fact as to its reasoning."

Regarding the "percentage of income formula" argument, Husband cites a single appellate opinion, *Franklin v. Franklin*, 746 S.W.2d 715, 718 (Tenn. Ct. App. 1987). In *Franklin*, this Court held that "the trial court abused its discretion in awarding a percentage of defendant's bonus" as periodic alimony. *Id.* We observed that "[t]he percentage award has some problems," in that "the amount of the bonus is uncertain and can vary from year to year." *Id.*; *see also Paul v. Paul*, No. 88-128-II, 1988 WL 95272, at *2 (Tenn. Ct. App., filed Sept. 16, 1988) ("It is error for the trial court to award spouse or child support based upon a percentage of a commission, bonus, or other income that is uncertain and may vary from year to year"). More recently, we held that "the trial court correctly included Husband's bonus pay in making its award of alimony but improperly awarded a percentage of that bonus income, rather than a specific amount." *Bettis v. Bettis*, No. E2016-00156-COA-R3-CV, 2016 WL 6161559, at *5 (Tenn. Ct. App., filed Oct. 24, 2016).

In this case, the trial court initially ruled orally that it would award Wife 20% of Husband's gross income. The court did not immediately put this ruling in a written order. Husband pointed out to the court that he believed that the court's ruling was erroneous. The court modified its initial order, and its written final judgment does not base its award on a percentage of Husband's income. As the Supreme Court has recently reiterated, "[i]t is well-settled that a trial court speaks through its written orders – not through oral statements contained in the transcripts – and that the appellate court reviews the trial court's written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (internal quotation marks omitted). Assuming, without deciding, that there was error in the trial court's initial oral ruling, the court cured it by amending the court's final judgment.

Regarding a future automatic modification of alimony, in *Longstreth v. Longstreth*, No. M2014-02474-COA-R3-CV, 2016 WL 1621094, at *5-*6 (Tenn. Ct. App., filed Apr. 20, 2016), we stated:

> The general rule is that alimony *in futuro* is not modifiable until a party files an application and makes the required showings. *See* Tenn. Code Ann. § 36–5–121(f)(2)(A); *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001).

\*       \*       \*

The foregoing notwithstanding, we have approved automatic increases in alimony in limited circumstances, such as when a minor child will soon reach majority and the obligor is no longer required to pay child support. *See* **Bloom v. Bloom**, No. W1998–00365–COA–R3–CV, 2000 WL 34410140, at *5 (Tenn. Ct. App. Sept. 14, 2000); **Erwin v. Erwin**, No. W1998–00801–COA–R3–CV, 2000 WL 987339, at *2 (Tenn. Ct. App. June 25, 2000). . . . By including the automatic modification provision, the trial courts in these cases "spared the parties the additional expense and trouble that they would have otherwise incurred from having to re-open the question of alimony *so soon after the court's decree.*" **Anderson v. Anderson**, No. M2005–02029–COA–R3–CV, 2007 WL 957186, at *8 (Tenn. Ct. App. Mar. 29, 2007) (emphasis added).

Except in cases involving unique circumstances that are expected to occur in the near future, automatic modifications are generally not appropriate.

In this case, it is undisputed that Husband will retire and begin drawing his pension no later than April of 2019, which is roughly three years after the trial court entered its order. Also undisputed is the amount of his pension; the trial court found that "[u]pon his retirement on April 10, 2019, Husband will receive a monthly pension of $3,596.00 per month gross income." There is little uncertainty here about what will happen with Husband's employment with the City of Memphis, although it is possible, as the trial court noted, that his poor health may cause him to retire earlier. We are of the opinion that this case presents "circumstances that are expected to occur in the near future" warranting the future automatic modification ordered by the trial court. Such a ruling promotes judicial economy, and saves both parties time and money. We find no abuse of discretion in this provision of the trial court's judgment.

A trial court's award of spousal support is governed by Tenn. Code Ann. § 36-5-121(i) (2014), which provides:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The trial court's final judgment is ten pages long, and contains numerous findings of fact pertinent to the statutory factors listed above. We find no merit in Husband's argument that the trial court failed to make sufficient findings of fact. The trial court's factual findings are entirely adequate to facilitate appellate review. The trial court did not abuse its discretion in its alimony award.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Terry Joe McBroom. The case is remanded for enforcement of the trial court's judgment and collection of costs below.

_____
CHARLES D. SUSANO, JR., JUDGE